UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

CHARLES A. JOHNSON
1803 Pinecroft Court
Frederick, MD 21702

AND

THERESA JOHSON
1803 Pinecroft Court
Frederick MD 21703

   Plaintiffs,

v.                Case No.: **WDQ 12 CV 2312**

FREDERICK MEMORIAL HOSPITAL, INC.
400 West Seventh Street
Frederick, MD 21701
Serve:
Thomas Kleinhanzl
400 West 7th Street
Frederick, MD 21701

AND

RAVI YALAMANCHILI, M.D.
Serve:
Conrad Varner, Esq.
121 East Patrick Street
Frederick, MD 21701

AND

RAVI YALAMANCHILI, M.D., P.A.
141 Thomas Johnson, Ste. 200
Frederick, MD 21702

_Filed stamp: AUG 06 2012, AT BALTIMORE, CLERK U.S. DISTRICT COURT, DISTRICT OF MARYLAND, BY ___ DEPUTY_

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 2 -

<u>Serve:</u>
Conrad Varner, Esq.
121 East Patrick Street
Frederick, MD 21701

**AND**

**BOYD A. DWYER, M.D.**
<u>Serve:</u>
Conrad Varner, Esq.
121 East Patrick Street
Frederick, MD 21701

**AND**

**MID MARYLAND NEUROLOGY, P.A.**
**85 Thomas Johnson Court #D**
**Frederick, MD 21702**

<u>Serve:</u>
Conrad Varner, Esq.
121 East Patrick Street
Frederick, MD 21701

**Defendants.**

## COMPLAINT FOR DAMAGES

Plaintiffs Charles A. Johnson and Theresa Johnson, by and through their undersigned counsel, Catherine D. Bertram, and Regan Zambri & Long, PLLC, hereby sue the above-named Defendants and allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because there is a question of federal law.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

2. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(a)(1) since the negligence occurred in Frederick County and the injuries occurred in Frederick County and Baltimore City, Maryland.

3. Plaintiffs filed their original claim with the Health Care Alternative Dispute Resolution Office of the State of Maryland on or about June 19, 2012.

4. On July 13, 2012, Plaintiffs filed their Amended and Restated Statement in Support of Claim together with their Certificate of Meritorious Claim and accompanying report from their qualified expert (the foregoing are attached together as Exhibit 1 excluding expert *curricula vitae*).

5. On July 13, 2012, Plaintiffs filed a Waiver of Arbitration, and on July 17, 2012, Harry L. Chase, Director, Health Care Alternative Dispute Resolution Office, issued an Order of Transfer (See Exhibit 2).

6. Accordingly, Plaintiffs have complied with the applicable requirements of Maryland law pertaining to the prerequisites for the filing of medical negligence claims.

## PARTIES

7. At all times material to this case, the Plaintiff, Charles A. Johnson ("Mr. Johnson"), has been a resident of the State of Maryland.

8. At all times material to this case, the Plaintiff, Theresa Johnson ("Mrs. Johnson"), has been a resident of the State of Maryland.

9. At all times material to this case, Plaintiff ("Mr. and Mrs. Johnson") have been married to each other.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

10. At all times material to this case, the Defendant Frederick Memorial Hospital, Inc. ("FMH") has been engaged in the staffing, credentialing and operation of a hospital in Frederick County, Maryland, acting individually and/or through actual and/or apparent agents, servants and/or employees, including but not limited to, Ravi Yalamanchili, M.D and/or Boyd A. Dwyer, M.D.

11. At all times material to this case the Defendant Ravi Yalamanchili, M.D. ("Dr. Yalamanchili"), has been engaged in the practice of medicine as a neurosurgeon in Frederick County, Maryland, acting individually and/or through actual and/or apparent agents, servants and/or employees.

12. At all times material to this case the Defendant Ravi Yalamanchili, M.D., P.A. ("RYPA"), has been engaged in the practice of medicine in Frederick County, Maryland, acting individually and/or through actual and/or apparent agents, servants and/or employees, including Dr. Ravi Yalamanchili, M.D.

13. At all times material to this case the Defendant Boyd A. Dwyer, M.D. ("Dr. Dwyer"), has been engaged in the practice of medicine as a neurologist in Frederick County, Maryland, acting individually and/or through actual and/or apparent agents, servants and/or employees.

14. At all times material to this case Defendant Mid Maryland Neurology, P.A., ("MMN"), has been engaged in the practice of medicine in Frederick County, Maryland, acting individually and/or through actual and/or apparent agents, servants and/or employees including but not limited to Dr. Boyd A. Dwyer.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036
202-463-3030

## FACTS

15.   Upon information and belief, in July, 2011, Plaintiff Charles Johnson was 53 years old, healthy and active, married to Plaintiff Theresa Johnson and was working full-time.

16.   On July 15, 2011, Mr. Johnson presented to the emergency department at Defendant Frederick Memorial Hospital with complaints of sudden-onset back pain and bilateral leg numbness and right leg spasms.

17.   Mr. Johnson came under the care of Dr. Albert Villarosa in the Emergency Department at Defendant Frederick Memorial Hospital.

18.   Mr. Johnson was admitted to Defendant Frederick Memorial Hospital on July 16, 2011, and came under the care of Dr. Ramani Nokku, an agent and employee of Defendant FMH, who diagnosed bilateral lower extremity numbness, and recommended a neurosurgical consultation and MRI "in the morning".

19.   On July 16, 2011, Mr. Johnson was seen by Defendant Yalamanchili, who diagnosed lumbago and recommended an MRI.

20.   On July 16, 2011, an MRI of the lumbar spine was attempted at Frederick Memorial Hospital, but the procedure was not accomplished as Mr. Johnson could not tolerate lying on the hard table due to his pain.  No effort was made to sedate Mr. Johnson to obtain the ordered imaging. No effort was made to stabilize Mr. Johnson.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

21. Mr. Johnson was discharged home from Frederick Memorial Hospital on July 17, 2011, unstable, without an MRI study of his spine, despite his continued complaints of lower extremity weakness.

22. On August 1, 2011, Mr. Johnson underwent an MRI at Open MRI of Frederick, which was read as showing a disc herniation at T11-12, with a mild mass effect on his spinal cord.

23. On August 2, 2011, Mr. Johnson saw Dr. Yalamanchili in his office.

24. Less than one week later, on August 6, 2011, Mr. Johnson presented to Family MRI, and underwent an MRI of the cervical spine. Mr. Johnson then returned to Family MRI on August 8, 2011, and underwent an MRI of the thoracic spine.

25. Following these studies, Mr. Johnson presented to Dr. Boyd Dwyer at Mid Maryland Neurology, for consultation on August 12, 2011. Mr. Johnson was still complaining of lower extremity weakness, with numbness and tingling, and reported that he required "round the clock" muscle relaxants and pain mediation, and was only able to ambulate with the assistance of a walker.

26. Mr. Johnson returned to Dr. Dwyer on August 31, 2011. By now, Mr. Johnson was complaining of progressive lower extremity weakness, as well as complaining of having to drag his leg after a day at work.

27. On September 27, 2011, Mr. Johnson experienced severe bilateral lower extremity weakness. He called 911. He was transported by ambulance to Defendant Frederick Memorial Hospital, and arrived at 10:00 a.m.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036
202-463-3030

28. On September 27, 2011, Mr. Johnson came under the care of Dr. Edward Thompson in the Emergency Department at Frederick Memorial Hospital. Despite the emergency neurological symptoms, Mr. Johnson was not examined and evaluated by a physician and was not told of the risk of the delay, nor was he offered a transfer to another facility. Instead, after almost 3 hours, Mr. and Mrs. Johnson were given coupons to The Coffee Bean by an agent of Defendant Frederick Memorial Hospital, as a token of their gratitude for the long wait. Dr. Thompson did not see Mr. Johnson until 1:30 p.m. on September 27, 2011. Dr. Thompson finally ordered an MRI of the lumbar spine only at 2:10 p.m. in order to rule out cord compression or cauda equine syndrome. The imaging is not ordered stat.

29. Mr. Johnson was transported to the Rosehill facility of Defendant Frederick Memorial Hospital for an MRI on September 27, 2011, at 3:30 p.m.

30. Mr. Johnson was transported back to the Emergency Department of Defendant Frederick Memorial Hospital on August 27, 2011, at 5:48 p.m. more than seven hours after he presented to FMH, now unable to move both legs.

31. Mr. Johnson was admitted to Defendant Frederick Memorial Hospital on September 27, 2011, and was transported to a room at around 7:00 p.m. The patient is also noted as retaining urine after floor admission, yet no urgent action is taken.

32. Mr. Johnson was finally seen by a neurologist, Dr. Ernest Clevinger, at almost 11:00 p.m. that evening. Dr. Clevinger ordered an MRI of the Thoracic spine to be done early the next day.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036
202-463-3030

- 7 -

33. Defendant Yalamanchili saw Mr. Johnson on September 28, 2011, at 7:30 a.m. and examined the patient. Defendant Yalamanchili agreed with the order for a thoracic MRI.

34. A thoracic MRI was still not performed until 4:00 p.m. on September 28, 2011, some seventeen (17) hours after it was ordered by Dr. Clevinger, and more than 31 hours since Mr. Johnson presented with complaints consistent with a thoracic spinal surgical emergency. The thoracic MRI demonstrated the T10-11 disc was compressing the thoracic spinal cord.

35. Based on the results of the Thoracic MRI, Dr. Clevinger ordered that Mr. Johnson's blood thinning medication be held in preparation for surgery.

36. Despite Mr. and Mrs. Johnson's requests that Mr. Johnson be transferred to a tertiary care hospital for surgery, Defendant Yalamanchili persuaded Mr. Johnson to let him perform the surgery at Defendant Frederick Memorial Hospital.

37. Defendant Yalamanchili finally performed a thoracic laminectomy and right T10-11 discectomy on Mr. Johnson on September 29, 2011.

38. Unfortunately, by the time Defendant Yalamanchili operated on Mr. Johnson, it was too late – Mr. Johnson had permanent lower extremity paralysis. Mr. Johnson was eventually transferred to the University of Maryland Medical Center, where he was an inpatient with severe complications for almost three weeks. He was then transferred to Adventist Rehab Hospital, where he stayed for nearly two months. Since that time, Mr. Johnson has required extensive medical care. He will require a lifetime of

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

medical and other care, and cannot work and earn income as he did before the malpractice.

## COUNT I
### (Medical Malpractice)

39. Plaintiff Charles Johnson incorporates, by reference, paragraphs 1 through 38 above, and further alleges that, at all times relevant to the allegations herein, Plaintiff Charles Johnson had a health care provider-patient relationship with each of the Defendants listed herein. Accordingly, Plaintiff Charles Johnson alleges that each of the Defendants had a duty to provide Plaintiff Charles Johnson with medical care and treatment in a timely fashion consistent with the applicable national standard of care under the same or similar circumstances.

40. Plaintiff Charles Johnson further alleges that each of the Defendants violated the national standard of care as practiced by reasonably competent health care providers under the same or similar circumstances, and, as a result, Plaintiff Charles Johnson suffered great physical and emotional pain, suffering, permanent paralysis and other complications and other damages. The negligent care and/or treatment by the Defendants included, but was not limited to, the following:

    a. The failure by Defendants FMH, MMN, Drs. Dwyer and Yalamanchili to effectively communicate changes in clinical condition to the specialist physicians, including failure to consult with each other as the treatment team, including also without limitation the imaging results, onset of abnormal neurological findings, progression of said signs and symptoms, bladder retention, ordering and obtaining the

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

-9-

right imaging of the right spinal levels in a timely fashion, and reporting and acting upon the test results and neurological findings including the results of imaging;

b. the failure by Defendants FMH, MMN, Dwyer and Yalamanchili, to recognize and appreciate the risks associated with failure to timely diagnose and treat Mr. Johnson for his condition, including earlier diagnosis and treatment in order to stabilize his spine and prevent this outcome, also as an alternative transferring the patient to a tertiary care facility for proper and timely diagnosis, imaging and treatment;

c. the failure by Defendants FMH, MMN and Dwyer to assess, diagnose, stabilize and timely treat Mr. Johnson;

d. the failure of Defendants FMH, MMN, Dwyer and Yalamanchili to consult each other in a timely fashion given imaging results and progressing neurological signs and symptoms during a window when the outcome could have been prevented and failure otherwise act as reasonably prudent health care providers under the circumstances.

41. Plaintiff Charles Johnson further alleges that, as a direct and proximate result of the negligent acts and/or omissions of the Defendants, Plaintiff has suffered, and continues to suffer, significant and severe permanent physical injuries, including paraplegia and other complications.

42. Plaintiff Charles Johnson further alleges that, as a further direct and proximate result of the negligent acts and/or omissions of the named Defendants,

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036
202-463-3030

Plaintiff has endured, and continues to endure, paralysis, severe physical pain and suffering, discomfort, mental anguish and other damages, including the inability to work and the need for continuous medical care and attention.

## COUNT II
### (Failure to Provide Informed Consent)

43. Plaintiff Charles Johnson incorporates, by reference, paragraphs 1 through 42 above, and further alleges that, at all times relevant to the allegations herein, Plaintiff Johnson had a health care provider-patient relationship with each of the Defendants, including without limitation, Defendants FMH, MMN, Dwyer, Yalamanchili, all of whom provided care and treatment to Plaintiff Charles Johnson from 2006 through and including September of 2011. Accordingly, Plaintiff Charles Johnson alleges that each of the Defendants had a duty to provide Plaintiff Charles Johnson with informed consent with regard to his conditions, including the risks associated with failure to treat his condition, also the nature and extent of his spinal cord condition after the July 2011 admission, the risks associated with that condition and failure to treat and stabilize that condition and then failure to give the patient the choice to transfer hospitals at 10 a.m. on September 27th given his clinical presentation and history so that he could obtain timely and appropriate assessment, stabilization and treatment, including imaging in order to avoid paralysis. All of this information needed to be conveyed to Mr. Johnson in a timely manner and in a format he could understand so he could make safe choices about his health care consistent with the applicable national standard of care under the same or similar circumstances.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 11 -

44. Plaintiff Charles Johnson further alleges that each of the Defendants violated the national standard of care as practiced by reasonably competent health care providers under the same or similar circumstances with regard to providing informed consent, and, as a result, Plaintiff suffered great physical and emotional pain, suffering and other damages. The negligent care and/or treatment by the Defendants with regard to informed consent included, but was not limited to the failure by Defendants FMH, MMN, Yalamanchili and Dwyer to provide timely and sufficient informed consent to Plaintiff Charles Johnson with regard to the nature of his clinical condition the likely delays and inability of the FMH to provide him with the care and testing he needed in a timely fashion, the probability of harm to the patient without timely and proper assessment, imaging and surgery, and the increased material risks associated with the delays in his medical management. Plaintiff Charles Johnson further alleges that had he been informed of the nature of his clinical condition and/or ailments, the nature of the likely delays and the probability of the lack of success given the foreseeable delays and the material risks of unfortunate outcomes associated with the delays, that he would not have consented thereto and would have been transferred and appropriately and timely assessed and treated resulting in no permanent harm.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT III
### (Loss of Consortium)

45. Plaintiff Teresa Johnson incorporates, by reference, paragraphs 1 through 44 above and further alleges that she is the wife of Plaintiff Charles Johnson.

46. Plaintiff Teresa Johnson alleges that as a direct and proximate result of the negligence of Defendants FMH, MMN, Dwyer and Yalamanchili, as previously described, she has spent considerable time caring for and assisting Plaintiff Charles Johnson from the time of the incident to the present. Plaintiff Theresa Johnson has suffered a loss of companionship, affection, assistance, and loss of sexual relations with Plaintiff Charles Johnson.

47. Plaintiff Teresa Johnson also asserts a claim for lost wages for her care and treatment of Plaintiff Charles Johnson as well as emotional distress.

## COUNT IV
### (EMTALA – Failure to Stabilize Charlie Johnson)

48. Plaintiff Charlie incorporates, by reference, paragraphs 1 through 47 above and further alleges that Defendant FMH is a participating hospital the provides services to Medicare recipients.

49. Plaintiff further alleges that Defendant FMH operated an emergency department at all relevant times herein.

50. Plaintiff presented to Defendant FMH for emergency screening, assessment and stabilization for his acute medical condition.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

51.     That as a participating hospital, FMH had a duty to provide anyone presenting for medical treatment with an appropriate medical screening and medical stabilization of the condition, or if the medically warranted to transfer the person to another facility, pursuant to 42 U.S.C. § 1395dd(a) – (c).

52.     Plaintiff contends that Defendant FMH, through its agents and employees, failed to provide him with appropriate medical screening, including but not limited to an MRI and a proper neurosurgical consult in order to determine that an urgent medical condition existed which required treatment.

53.     Plaintiff further contends that Defendant FMH, through its agents and employees, failed to transfer him to the appropriate facility for imaging and care, instead, said Defendant unsafely discharged, without good faith, the plaintiff without first diagnosing and stabilizing his emergency medical condition in violation of 42 U.S.C. § 1395dd(a) – (c).

54.     Plaintiff needed imaging of his thoracic spine via MRI and said imaging was not done for pre-textual reasons in bad faith, including a statement that the patient's intractable back pain prevented him from lying flat for the imaging. No pain medication was ordered to facilitate the imaging necessary to diagnose and stabilize the patient. Further, Defendant FMH failed to obtain a neurosurgical consult for the patient in the Emergency Department in order to assess, diagnose and stabilize the patient.

55.     Instead, the patient was admitted, in bad faith, and then discharged without a proper diagnosis or stabilization of his progress, emergency condition.

Regan Zambri Long.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

56.     As a result of Defendant FMH's actions and inactions the Plaintiff sustained permanent paralysis and other injuries.

57.     Said injuries were foreseeable and the result of material deterioration of the plaintiff's emergency medical condition which was not stabilized in the Defendant FMH's emergency department.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, in an amount which exceeds the jurisdictional limit of this Court, plus interest and costs.

### JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all issues.

Respectfully submitted,

REGAN ZAMBRI LONG

By: *[signature]*

Catherine D. Bertram  #07115
cbertram@reganfirm.com
Jacqueline Colclough  #29104
Jcolclough@reganfirm.com
1919 M Street, N.W., Suite 350
Washington, D.C. 20036
PH:  (202) 463-3030
*Counsel for Plaintiffs*